EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Juan Gutiérrez Calderón, y otros<br><br>Demandantes<br><br><br>U.S. Fire Insurance Company<br><br>Peticionaria<br><br>v.<br><br>Autoridad de Acueductos y Alcantarillados; Autoridad de Energía Eléctrica y otros<br><br>Recurridos | Certiorari<br><br>2006 TSPR 21<br><br>166 DPR _____ |

Número del Caso: CC-2004-840

Fecha: 10 de febrero de 2006

Tribunal de Apelaciones:

  Región Judicial de Carolina

Juez Ponente:

  Hon. Ismael Colón Birriel

Abogado de la Parte Demandante-Peticionaria:

  Lcdo. Jaime F. Agrait Lladó

Abogados de la Parte Recurrida:

  Lcdo. Pedro Santiago Rivera
  Lcdo. Luis M. Ortega García

Materia: Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Juan Gutiérrez Calderón, y otros<br><br>     Demandantes<br><br>     . . .<br><br>U.S. Fire Insurance Company<br><br>     Peticionaria<br><br>          v.<br><br>Autoridad de Acueductos y Alcantarillados; Autoridad de Energía Eléctrica y otros<br><br>     Recurridos | CC-2004-840 |

Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 10 de febrero de 2006

Nos corresponde determinar en esta ocasión si la Junta Financiera de la Oficina del Comisionado de Instituciones Financieras se excedió en sus facultades al establecer, mediante reglamento, que la tasa de interés legal por sentencia que le aplica a las corporaciones públicas es la misma que le aplica al Estado Libre Asociado, sus agencias e instrumentalidades, así como a los municipios, y no el tipo que le aplica al litigante no gubernamental.

La controversia ante nuestra consideración es una estrictamente de derecho. Los hechos que sirven de trasfondo a la misma no están en controversia. Pasemos entonces a resumir los mismos.

I

El 10 de septiembre de 1998 el Tribunal de Primera Instancia dictó una sentencia en la que encontró responsable a la Autoridad de Energía Eléctrica (la "A.E.E.") y a la Autoridad de Acueductos y Alcantarillados (la "A.A.A.") de un accidente aéreo ocurrido el 26 de julio de 1993. En el fatal accidente, fallecieron tres policías miembros de la Unidad Aérea de la Policía de Puerto Rico, luego de estrellarse el helicóptero en el que viajaban contra unas líneas eléctricas que no estaban debidamente identificadas, ubicadas en la Represa de Carraízo.

En la sentencia dictada el foro de instancia determinó que tanto la A.E.E. como la A.A.A. fueron temerarias en la tramitación del caso, por lo que ordenó el pago de honorarios de abogados e impuso el pago de intereses por temeridad a tenor con la Regla 44.3 de las Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 44.3.

Asimismo, el tribunal declaró con lugar la demanda de subrogación que había presentado la aseguradora de la Policía de Puerto Rico, la compañía US Fire Insurance, Co. (la "aseguradora" o la "peticionaria"), contra la A.E.E. y la A.A.A. En su demanda, la aseguradora había solicitado el recobro del valor del helicóptero accidentado que le había reembolsado a la Policía.

Luego de varios incidentes procesales que no son necesarios detallar, US Fire Insurance Co. solicitó ejecutar la sentencia dictada a su favor. La A.E.E. consignó en el tribunal la suma de $1,000,000.00 para

satisfacer la sentencia en su contra. La aseguradora objetó la cantidad consignada y adujo que la A.E.E. y la A.A.A. debían pagar interés sobre la sentencia a razón de 9.25% anual, que era la tasa de interés aplicable a los litigantes privados conforme establecía el Reglamento 78-1 de 25 de octubre de 1988, Reglamento Núm. 3702, promulgado por la Junta Financiera de la Oficina del Comisionado de Instituciones Financieras (el "Reglamento 78-1") para esos fines. La A.E.E. se opuso y adujo que conforme lo establecido en el Reglamento 78-1, ésta debía pagar el interés correspondiente a las entidades gubernamentales.

Así las cosas, el Tribunal de Primera Instancia emitió una resolución el 28 de enero de 2004 en la cual determinó que la tasa de interés aplicable a la sentencia dictada contra la A.E.E. y la A.A.A. era, en efecto, la aplicable a las entidades gubernamentales según establecido en el Reglamento 78-1, y fijó dicho interés en 5.25% anual.

Inconforme, la aseguradora acudió ante el Tribunal de Apelaciones. En su escrito, arguyó que las corporaciones públicas tienen personalidad jurídica propia por lo que no pueden gozar de un trato preferente en el pago de intereses legales por temeridad e intereses post sentencia. Adujo que éstas no podían equipararse a las instrumentalidades de gobierno que carecen de personalidad jurídica por lo que en la medida que en el Reglamento 78-1 se tratan a ambas de la misma manera, el Reglamento era nulo. Indicó también que la determinación del foro de instancia era errónea por ser

contraria a lo resuelto en *Rodríguez Cancel v. A.E.E.*, 116 D.P.R. 443 (1985).

El Tribunal de Apelaciones dictó sentencia confirmando la determinación del Tribunal de Primera Instancia, aunque modificó la misma para que reflejara el interés prevaleciente a la fecha en que se dictó la sentencia a favor de US Fire Insurance, Co., a saber: 5.50% y no el 5.25%, que había fijado el foro primario.

Inconforme nuevamente, US Fire acudió ante nosotros en petición de certiorari el pasado 20 de septiembre de 2004. En su petición señaló como error lo siguiente:

> Erró el Honorable Tribunal de Instancia y el Honorable Tribunal Apelativo al concluir, en contra del derecho sustantivo vigente contenido en la jurisprudencia (Rodríguez Cancel v. AEE, 116 DPR 443) y en la Regla 44.3 de Procedimiento Civil [sic] que las corporaciones públicas gozan de un trato preferente en el pago de intereses legales por temeridad, equiparándolas a instrumentalidades públicas sin personalidad jurídica.

El 17 de diciembre de 2004, dictamos una orden dirigida a la A.E.E. y la A.A.A. para que se expresaran sobre el recurso de *certiorari* presentado. Ambas partes han comparecido por lo que pasamos a resolver.

II

La controversia ante nuestra consideración nos permite determinar si procede hacer extensiva a las corporaciones públicas el mismo interés legal por sentencia que le aplica al Estado Libre Asociado, sus agencias e instrumentalidades y a los municipios, conforme establece el Reglamento 78-1.

A

La Regla 44.3 de las Reglas de Procedimiento Civil, regula lo concerniente a la fijación del interés legal tanto post sentencia como por temeridad.[1] El interés post sentencia se refiere al tipo de interés que se impone a favor de la parte victoriosa en todas las sentencias que ordenen el pago de dinero. El mismo se computa sobre la cuantía de la sentencia, incluyendo costas y honorarios de

---

[1] La Regla 44.3 de las Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 44.3, dispone:

a) Se incluirán intereses al tipo que fije por reglamento la Junta Financiera de la Oficina del Comisionado de Instituciones Financieras y que está en vigor al momento de dictarse la sentencia, en toda sentencia que ordena el pago de dinero, a computarse sobre la cuantía de la sentencia desde la fecha en que se dictó la sentencia y hasta que ésta sea satisfecha, incluyendo costas y honorarios de abogado. El tipo de interés se hará constar en la sentencia.

La Junta fijará y revisará periódicamente la tasa de interés por sentencia tomando en consideración el movimiento en el mercado y con el objetivo de desalentar la radicación de demandas frívolas, evitar la posposición irrazonable en el cumplimiento de las obligaciones existentes y estimular el pago de las sentencias en el menor tiempo posible.

b) El tribunal también impondrá a la parte que haya procedido con temeridad el pago de interés al tipo que haya fijado la Junta en virtud del inciso (a) de esta regla y que esté en vigor al momento de dictarse la sentencia desde que haya surgido la causa de acción en todo caso de cobro de dinero y desde la radicación de la demanda, en casos de daños y perjuicios, y hasta la fecha en que se dicte sentencia a computarse sobre la cuantía de la sentencia, excepto cuando la parte demandada sea el Estado Libre Asociado de Puerto Rico, sus municipios, agencias, instrumentalidades o funcionarios en su carácter oficial. El tipo de interés se hará constar en la sentencia.

c)

abogados, y se fija desde la fecha en que se dicte la sentencia hasta que se satisface la misma. *Zequeira v. C.R.U.V.*, 95 D.P.R. 738, 741 (1968). Su imposición es mandatoria a toda parte perdidosa sin distinción alguna. *Municipio de Mayagüez v. Rivera*, 113 D.P.R. 467, 470 (1982); *P.R. Ame. Ins. Co. v. Tribunal Superior*, 82 D.P.R. 621, 622-623 (1962).

De otra parte, el interés por temeridad se impone cuando convergen los siguientes dos requisitos: que la parte haya procedido temerariamente y se trate de un caso sobre cobro de dinero o daños y perjuicios. *Lameiro v. Dávila*, 103 D.P.R. 834, 841 (1976).

El mismo se fija sobre la suma principal de la sentencia dictada sin incluir las costas ni honorarios de abogado. El interés por temeridad se calcula dependiendo de la reclamación de que se trate: en los casos de cobro de dinero se computa desde que surge la causa de acción y en el caso de daños y perjuicios a partir de la presentación de la demanda.

La Regla 44.3 específicamente exime al Estado, sus municipios, instrumentalidades y funcionarios en su carácter oficial, del pago de intereses por temeridad. En *Rodríguez Cancel v. A.E.E.,* 116 D.P.R. 443 (1985) interpretamos esta exención y resolvimos que la misma no le era extensible a las corporaciones públicas. Véase discusión *infra*.

B

La Regla 44.3 provee para que la Junta Financiera de la Oficina del Comisionado de Instituciones Financieras fije el interés legal por sentencia. La Regla ordena que para fijar dicha tasa se tomará en consideración "el movimiento en el mercado con el objetivo de desalentar la radicación de demandas frívolas, evitar la posposición irrazonable en el cumplimiento de las obligaciones existentes y estimular el pago de las sentencias en el menor tiempo posible." La Regla dispone que la Junta Financiera podrá revisar las tasas correspondientes periódicamente.

La referencia a la Junta Financiera como ente que habrá de fijar los tipos de intereses a imponer se inserta en la Regla 44.3 en virtud de la Ley Núm. 78 del 11 de julio de 1988 ("Ley Núm. 78"). Con esta enmienda a la Regla 44.3 se eliminó el interés fijo del 12% dispuesto en la misma hasta ese momento.

El interés al 12% a su vez, fue producto de una enmienda al texto original de la Regla 44.3 de las Reglas de Procediendo Civil de 1979. En su texto original, la Regla 44.3 solamente disponía que en las sentencias dictadas que se ordenara el pago en dinero se incluirían intereses al tipo legal. Para ello entonces se utilizaba lo dispuesto en el Art. 1649 del Código Civil, 31 L.P.R.A. sec. 4591, que disponía que el tipo de interés aplicable a los fallos y sentencias no satisfechas fuese el 6%.

La gran discrepancia que existía en Puerto Rico entre la tasa de interés legal por sentencia y la tasa de interés prevaleciente en el mercado de dinero estimulaba a los demandados a litigar irrazonablemente sus casos para posponer la adjudicación final de las controversias. En atención a lo cual, el legislador tuvo a bien enmendar el texto original de la Regla 44.3 mediante la Ley Núm. 82 del 6 de julio de 1985, a fin de proveer una tasa fija de interés anual de 12%. Véase, *Monrozeau v. Rivera Cruz,* 121 D.P.R. 885 (1988); *Riley v. Rodríguez Pacheco*, 124 D.P.R. 733 (1989). Véase además, Exposición de Motivo de la Ley Núm. 82 del 6 de julio de 1985.

Tres años más tarde, al aprobarse la Ley Núm. 78, la Asamblea Legislativa enmendó nuevamente la Regla 44.3 y derogó el interés al 12%. Lo sustituyó por un mecanismo flexible que permitía la revisión periódica de la tasa de interés para ajustarla a las fluctuaciones en el mercado. Se estimó que la tasa fija de 12% anual resultaba onerosa para el Estado al impedir que éste se beneficiara de esas fluctuaciones y en ocasiones el interés que pagaba sobre la sentencia dictada era superior al interés prevaleciente en el mercado. Así, la Ley Núm. 78 proveyó que fuera la Junta Financiera de la Oficina del Comisionado de Instituciones Financieras la cual, mediante reglamento, estableciera las tasas de interés correspondientes. Véase Informe Conjunto del P. del S. 1422 de 15 de abril de 1988.

Así las cosas, la Junta Financiera aprobó el 25 de octubre de 1988 el Reglamento Núm. 78-1.[2]   El Reglamento

---

[2] El Reglamento 78-1 de 25 de octubre de 1988, promulgado por la Junta Financiera de la Oficina del Comisionado de Instituciones Financieras dispone, en lo pertinente, lo siguiente:

Sección 2 <u>Exposición de Motivo y Memorial Explicativo</u>:

La Regla 44.3, según enmendada, dispone que la Junta Financiera fijará la tasa de interés pagadera sobre la cuantía de toda la sentencia (incluyendo costas y honorarios de abogado) considerando las fluctuaciones en el mercado y con el propósito de desalentar los pleitos frívolos e incentivar el pago de las sentencias. Este mandato legislativo solo se cumple añadiendo un "margen punitivo" al costo de fondos para el deudor por sentencia, de manera que la tasa resultante mueva a dicho deudor al pago de la misma.

Sin embargo, el costo de fondos no es igual para todo tipo de deudor, ya que el mercado no es homogéneo. El costo para el Estado, por ejemplo, es aproximadamente un 70% del rendimiento de ciertos instrumentos de deuda del Gobierno Federal en el mercado exento, mientras que el mercado monetario privado se guía esencialmente por la tasa preferencial. Estas diferencias requieren que se identifiquen los índices adecuados a los que se le sumará el margen punitivo correspondiente.

Atendiendo a estas diferencias, y en el interés de proveer una tasa que justamente logre el mandato legislativo la Junta establece las siguientes tasas a ser calculadas y certificadas periódicamente por el Comisionado.

Sección 3: <u>Fijación de Tasas</u>

a)      Sentencias impuestas al Estado Libre Asociado de Puerto Rico, sus municipios, agencias, instrumentalidades, corporaciones públicas o funcionarios en su carácter oficial: La tasa equivalente al rédito de los "U.S. Treasury Bills" con vencimiento a seis (6) meses redondeado al ½ punto más cercano.

dispuso que la manera más adecuada para cumplir el objetivo de la Ley Núm. 78 era añadiendo lo que el Reglamento denominó como un "margen punitivo", al costo de los fondos para el deudor por sentencia. Así, la tasa resultante constituirá un verdadero incentivo para el pago de la sentencia dictada.

El Reglamento reconoció sin embargo, que el costo de los fondos no era igual para todo deudor por sentencia ya que el mercado no era homogéneo, por lo que si se quería incentivar el pago de las sentencias dictadas la tasa a fijarse no podía ser la misma para todos los deudores por sentencia. El Reglamento señaló por ejemplo, que para el Estado el costo del dinero "es [de] aproximadamente un 70% del rendimiento de ciertos instrumentos de deuda del Gobierno federal en el mercado exento, mientras que el mercado monetario se guía esencialmente por la tasa preferencial." Reglamento 78-1, Sec.2.

Ante esta realidad, la Junta Financiera estimó que era necesario establecer tasas de intereses distintas; una para el deudor gubernamental y otra para los litigantes no

b)    Sentencias impuestas a entidades no contempladas en el anterior apartado: La tasa equivalente a un punto porcentual sobre la tasa preferencial aplicable. La tasa preferencial es la tasa de interés que cobran los principales bancos en la Ciudad de Nueva York a sus mejores clientes comerciales e industriales en préstamos a corto plazo. Si la tasa preferencial no fuera uniforme para todos los bancos principales, se considerará como tasa preferencial la más baja entre las tasas cobradas por The Chase Manhattan Bank, N.A. y Citibank, N.A.

c)

gubernamentales. De esta forma se lograba adelantar el objetivo de la Ley Núm. 78 de que el deudor pague la sentencia impuesta.

Como ya indicamos, la controversia del caso de autos gira precisamente alrededor de dicha diferenciación; es decir, si como cuestión de derecho la Junta Financiera de la Oficina del Comisionado de Instituciones Financieras podía fijar una tasa de interés menor para las corporaciones públicas y no aplicarle a éstas la misma tasa que estableció para los litigantes privados.

III

La Autoridad de Energía Eléctrica así como la Autoridad de Acueductos y Alcantarillados son corporaciones públicas con personalidad legal distinta y separada del gobierno del Estado Libre Asociado de Puerto Rico; como tal, gozan ambas de una estructura corporativa semejante a las de las corporaciones privadas. Véase Ley Núm. 57 de 30 de mayo de 1979, según enmendada, 22 L.P.R.A. secs. 191 *et seq.* y Ley Núm. 40 de 1ero de mayo de 1945, según enmendada, 22 L.P.R.A. secs. 141 *et seq.,* respectivamente. Ambas se definen en sus leyes habilitadoras como instrumentalidades gubernamentales autónomas y ambas llevan a cabo servicios esenciales para el país contribuyendo así al desarrollo económico de Puerto Rico. Véase, 22 L.P.R.A. secs. 192, 142 respectivamente. Véase además, Muñoz Amato, "La reorganización de la Rama Ejecutiva" en *La Reorganización de la Rama Ejecutiva*, Escuela de Administración Pública, Universidad de Puerto Rico, 1951,

págs. 72-84. Tan es así, que la propia ley orgánica de la A.A.A establece que el ejercicio de parte de ésta de los poderes conferidos en ley "se estimará y juzgará como una función gubernamental esencial." 22 L.P.R.A. sec. 142.

En *Commoloco of Caguas, Inc. v. Benítez Díaz*, 126 D.P.R. 478 (1990) tuvimos ocasión de expresarnos sobre el rol preeminente de las corporaciones públicas en nuestro desarrollo. Allí reconocimos que las corporaciones públicas surgieron como respuesta al deseo y la necesidad de agilizar y promover la efectividad de la obra pública ante la complejidad de funciones que confrontaron los países a partir de la Primera Guerra Mundial. 126 D.P.R. pág. 490. Resaltamos, que a pesar de la autonomía que las caracteriza éstas "no pierden su cualidad de instrumentalidad gubernamental, creada para responder a propósitos de utilidad pública." *Loc. cit.* En igual sentido, *Torres Ponce v. Jiménez*, 113 D.P.R. 58 (1982). Véase además, De Jesús Toro, "Historia de la reorganización de la Rama Ejecutiva de Puerto Rico", en *La Reorganización de la Rama Ejecutiva, op. cit.*, págs. 117-118. Las corporaciones públicas son parte importante de la organización administrativa del Estado moderno, al ocuparse de amplios sectores de la vida moderna. *McCrillis v. Aut. de Navieras de P.R.*, 123 D.P.R. 113 (1988).

Cónsono con lo anterior, hemos resuelto que la dualidad entre corporación pública y su estructuración similar a una corporación privada, no impide que se concluya que los fondos que utiliza provienen de fuentes

gubernamentales y como tal, constituyen fondos públicos, independientemente de que éstos no pasen a formar parte del presupuesto del Estado. *Municipio de Mayagüez v. Rivera*, 113 D.P.R. 467, 475 (1982); *Commoloco of Caguas v. Benítez Díaz, supra; Huertas v. Cia. de Fomento Recreativo,* 147 D.P.R. 12 (1998). De ahí que los fondos que administran estas corporaciones estén sujetos a la labor fiscalizadora del Contralor de Puerto Rico, entre otras entidades gubernamentales. 2 L.P.R.A. sec. 73.

Es claro entonces que aun cuando las corporaciones públicas llevan a cabo sus funciones con cierto grado de autonomía operacional, no por ello dejan de estar investidas de un alto interés gubernamental para el Estado, a quien le interesa velar por que su funcionamiento sea de la más alta calidad y eficiencia para beneficio del país y que sus fondos se utilicen de forma prudente.

Con este trasfondo, analicemos entonces los planteamientos esgrimidos por la peticionaria.

IV

En su recurso, la peticionaria US Fire Insurance Co. planteó que la Junta Financiera de la Oficina del Comisionado de Instituciones Financieras actuó al margen de sus poderes delegados y en contravención de lo resuelto en *Rodríguez Cancel v. A.E.E.,* 116 D.P.R. 443 (1985), al disponer mediante reglamento que la tasa de interés legal por sentencia que le aplica a las corporaciones públicas es la misma que le aplica al gobierno central y a los municipios. Como se indicó, esta tasa de interés es menor

que la que se le aplica al litigante privado. No tiene razón la peticionaria.

En *Rodríguez Cancel* resolvimos, interpretando el texto y el historial legislativo de la Regla 44.3 de las Reglas de Procedimiento Civil, que dicha regla solo eximía del pago de intereses por temeridad al Estado, los municipios, agencias e instrumentalidades y funcionarios en su carácter oficial. Concluimos, que el legislador excluyó expresamente a las corporaciones públicas de las entidades exentas, por lo tanto contra éstas se podía ordenar el pago de tal interés. Nada hay en *Rodríguez Cancel* que nos permita extrapolar el análisis de carácter estatutario allí esbozado al caso ante nuestra consideración.

La controversia planteada en esta ocasión versa sobre el monto del interés por sentencia que procede aplicar a la sentencia dictada contra la A.E.E. y la A.A.A. Como ya indicamos, la Ley Núm. 78 que enmendó la Regla 44.3, específicamente delegó en la Junta Financiera esta tarea. Como directriz, la Ley Núm. 78, puntualizó que en esa gestión se debía tomar en consideración "el movimiento en el mercado" y que el objetivo final era que el interés fijado fuese una tasa que alentara al litigante perdidoso a pagar la sentencia dictada en su contra.

Reiteradamente hemos resuelto que una legislatura puede delegar su autoridad reguladora en una agencia de manera amplia, siempre que establezca normas adecuadas o un principio inteligible para guiar a la agencia. *Asociación de Farmacias v. Dpto. de Salud*, res. 5 de febrero de 2002,

156 D.P.R. ___ (2002), 2002 T.S.P.R. 13, 2002 J.T.S. 18. Una agencia administrativa formula sus reglamentos al amparo de una delegación expresa de la Asamblea Legislativa, para darle contenido sustantivo detallado a alguna norma estatutaria general o de algún otro modo complementar normativamente el esquema legislativo. *Hernández v. Colegio de Optómetras*, res. 24 de junio de 2002, 157 D.P.R. ___ (2002), 2002 T.S.P.R. 85; *Tosado Cortés v. A.E.E.*, res. 12 de agosto de 2005, 165 D.P.R.___ (2005); 2005 T.S.P.R. 113, 2005 JTS ___; *Asociación de Maestros v Comisión de Relaciones del Trabajo*, res. 31 de marzo de 2003, 159 D.P.R. ___ (2003), 2003 T.S.P.R. 47; 2003 J.T.S. 50. Un reglamento no puede conferir más derechos, ni imponer más limitaciones, de lo que autorice su ley habilitadora. Véase, *M.& B.S. Inc. v. Depto. Agricultura*, 118 D.P.R. 319, 326 (1987).

La Ley Núm. 78 válidamente delegó en la Junta Financiera la tarea de fijar las tasas de interés correspondiente, ya que es la Junta el ente con el *expertise* necesario para la tarea encomendada. El Art. 8 de la Ley Núm. 4 de 11 de octubre de 1985, 7 L.P.R.A. sec. 2009, dispuso para la creación de la Junta Financiera en la Oficina del Comisionado de Instituciones Financieras. Conforme establece su ley habilitadora su función es la de fijar, regular, aumentar o disminuir por reglamento y durante el tiempo que ello fuere necesario, los tipos de interés y/o cargos máximos aplicables a determinadas transacciones económicas dentro del marco de cualquiera

sector, renglón o actividad económica del país, no cubiertas por leyes especiales. 7 L.P.R.A. 2009. La ley establece que las determinaciones de la Junta deben estar basadas en un análisis sobre el costo prevaleciente en el mercado para el dinero disponible que se utiliza para financiar diferentes renglones o actividades económicas. *Loc. cit.*

El Reglamento 78-1 reconoce que el costo de los fondos no es igual para todo deudor por sentencia ya que "el mercado no es homogéneo." Por lo tanto, para poder incentivar el pago de una sentencia es necesario establecer tasas de interés distintas teniendo como base los costos de los fondos. En ese sentido y como ya habíamos indicado, "el costo para el Estado, por ejemplo, es aproximadamente un 70% del rendimiento de ciertos instrumentos de deuda del Gobierno Federal en el mercado exento, mientras que el mercado monetario privado se guía esencialmente por la tasa preferencial." Reglamento Núm. 78-1, Sec. 2. Ello justifica entonces la diferenciación establecida en el Reglamento 78-1 entre las entidades gubernamentales y las no gubernamentales.

De la determinación de la Junta Financiera se colige que ésta, conforme su conocimiento especializado, estimó que no existe distinción significativa entre las corporaciones públicas y las demás entidades gubernamentales para efecto del valor de sus fondos en el mercado. Siendo ello así, y para adelantar la política pública de la Ley Núm. 78 de que no se dilate

irrazonablemente el pago de una sentencia, determinó necesario establecer dos tasas de interés distintas dependiendo de quién es el deudor por sentencia.

En atención a lo expresado, resolvemos que la Asamblea Legislativa podía, válidamente, delegar en la Junta Financiera de la Oficina del Comisionado de Instituciones Financieras la tarea de fijar la tasa de interés legal por sentencia. A su vez, la delegación de la Asamblea Legislativa se hizo con parámetros claros para guiar la discreción de la Junta. La Junta Financiera por su parte, conforme al poder delegado y en atención a su *expertise* sobre la materia determinó, utilizando criterios objetivos, que era necesario establecer distintas tasas de interés por sentencia, una para los entes gubernamentales incluyendo las corporaciones públicas y otra para el sector privado. La actuación de la Junta Financiera no fue arbitraria ni caprichosa y la misma se ajustó a los parámetros de su delegación. No se incurrió en el error alegado.

La Junta Financiera en efecto le impartió contenido a la norma estatutaria según delegada y de esta forma complementó normativamente el esquema legislativo. En otro contexto hemos indicado que "un trato contributivo diferente, de estipendios de naturaleza diferente, *per se* no constituye un trato preferencial ni discriminatorio." *Rodríguez v. Secretario de Hacienda*, 135 D.P.R. 219, 224 (1994).

Por los fundamentos antes mencionado, se expide al auto y se confirma la determinación del Tribunal de Apelaciones y del Tribunal de Primera Instancia.

Se dictará sentencia de conformidad.


                          Anabelle Rodríguez Rodríguez
                               Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Juan Gutiérrez Calderón, y otros<br><br>    Demandantes<br><br>    . . .<br><br>U.S. Fire Insurance Company<br><br>    Peticionaria<br><br>      v.<br><br>Autoridad de Acueductos y Alcantarillados; Autoridad de Energía Eléctrica y otros<br><br>    Recurridos | CC-2004-840 |

SENTENCIA

San Juan, Puerto Rico, a 10 de febrero de 2006

Por los fundamentos expuestos en la Opinión que antecede, los cuales se incorporan íntegramente a la presente, se expide al auto y se confirma la determinación del Tribunal de Apelaciones y del Tribunal de Primera Instancia.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez inhibido.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo