ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| CONSEJO DE TITULARES DEL CONDOMINIO PORTAL SOFÍA T/C/C ASOCIACIÓN DE RESIDENTES DEL CONDOMINIO PORTAL DE SOFÍA<br><br>PETICIONARIOS<br><br>v.<br><br>TRIPLE-S PROPIEDAD<br><br>RECURRIDOS | KLCE202400490 | *Certiorari p*rocedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Número: GB2019CV01167<br><br>Sobre: Incumplimiento de contrato de seguros |
|---|---|---|

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Rivera Torres, la Jueza Rivera Pérez y el Juez Campos Pérez

Ortiz Flores, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 19 de julio de 2024.

Comparece el Consejo de Titulares del Condominio Portal de Sofía (Consejo de Titulares; peticionarios) y nos solicita que revoquemos la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI) emitida el 3 de abril de 2024 y notificada el 5 de abril de 2024. En la referida resolución se declaró No Ha Lugar la *Solicitud de Sentencia Sumaria Parcial* presentada por los peticionarios.

Por las razones que expondremos a continuación, expedimos el auto de *certiorari* y revocamos la resolución recurrida.

**I**

A raíz de los estragos provocados por el paso del Huracán María en la Isla, el Condominio Portal de Sofía —ubicado en el Municipio de Guaynabo— sufrió daños como muchas otras estructuras del país. Consecuentemente el Consejo de Titulares reclamó la indemnización correspondiente a su aseguradora Triple-S Propiedad (Triple-S; recurrida). Dicha reclamación fue al amparo de la póliza de seguro comercial número 30-CP-81086955-1 que se encontraba vigente al momento en que ocurrieron los daños. Luego de presentada una reclamación ante la

Número Identificador
SEN2024_____

aseguradora, el 19 de septiembre de 2019 el Consejo de Titulares instó una *Demanda* contra esta por concepto de incumplimiento de contrato.[1] En su petitorio alegó que la aseguradora incurrió en demoras irrazonables en la compensación por los daños reclamados y añadió que Triple-S inicialmente realizó una oferta de $66,980.20 la cual pretendía cubrir la totalidad de los daños a pesar de que los peticionarios estimaron una cuantía que superaba los $2,000,000.00.[2] También alegaron en la *Demanda* que luego de la oferta inicial, la propia recurrida, por conducto de su ajustador Benj. Acosta Independent Insurance Adjusters - All Lines, admitió que los daños totalizaban por lo menos $318,580.32 menos los descuentos mandatorios.[3] Por tal motivo, el Consejo de Titulares solicitó al tribunal que ordenara a la recurrida a realizar un pago por esta cantidad, luego de restados los descuentos aplicables, a favor de los peticionarios dentro de diez (10) días calendario contados a partir del recibo del emplazamiento y copia de la *Demanda*.[4]

En su *Contestación a Demanda*, Triple-S esencialmente negó las alegaciones del Consejo de Titulares.[5] Indicó que la oferta inicial realizada por la cantidad de $66,980.20 fue rechazada por los peticionarios, lo que significaba que esta no se encontraba en la obligación de emitir pago alguno pues la cuantía de los daños se hallaba aún en controversia.[6] Además, incluyó sus defensas afirmativas. Luego, por órdenes del tribunal, Triple-S realizó y presentó un nuevo estimado atemperándose a los costos actuales. Los daños totalizaron entonces en $717,388.34 que luego de los deducibles correspondientes, se redujo a $419,544.41.[7] Dicho estimado fue notificado al Consejo de Titulares.

Así las cosas, el 14 de febrero de 2024 los peticionarios solicitaron por segunda ocasión una sentencia sumaria parcial. En esta esencialmente

---

[1] Apéndice del recurso, págs. 1-10.
[2] Apéndice del recurso, pág. 6.
[3] *Id.*
[4] Apéndice del recurso, pág. 9.
[5] Apéndice del recurso, págs. 11-38.
[6] Apéndice del recurso, pág. 22.
[7] Apéndice del recurso, págs. 251-252.

argumentaron que el estimado reciente realizado por Triple-S, por la suma de $419,544.41, constituía una deuda líquida y exigible por lo que la recurrida estaba en la obligación de pagar. Esto último puesto que no podía retractarse de pagar dicha cantidad a raíz de lo resuelto por el Tribunal Supremo en el caso *Carpets & Rugs v. Tropical Reps.* 175 DPR 615 (2009).[8] Además, solicitó intereses por mora bajo lo dispuesto en el Artículo 1061 del derogado Código Civil de 1930, la imposición de intereses legales por temeridad y que el TPI ordenara a la recurrida el pago de honorarios de abogado.[9] En su súplica concluyó entonces que Triple-S adeudaba al Condominio Portales de Sofía en total la cantidad de $1,060,80.40.[10]

En contraste, Triple-S presentó su *Moción en Oposición a Solicitud de Sentencia Sumaria* y planteó que a los peticionarios no les corresponde pago alguno por haber incurrido en fraude al alegar daños por cantidades exorbitantes y porque todavía había controversia entre las partes sobre la cantidad a ser pagada, lo que la hacía una deuda ilíquida e inexigible.[11] Esto último porque los peticionarios no habían aceptado la cuantía según exige el Artículo 27.166 del Código de Seguros y, además de esto, tampoco habían presentado en Asamblea con el Consejo de Titulares del Condominio la cantidad notificada, tal y como requiere el Artículo 63 de la Ley de Condominios de Puerto Rico, 31 LPRA sec. 1921 *et seq*. De igual manera, argumentó que el caso citado *Carpets & Rugs v. Tropical Reps., supra* no era de aplicación a la controversia, nuevamente por el hecho de que no se había dado una aceptación a la oferta por parte de los peticionarios.

El TPI emitió su *Resolución* el 3 de abril de 2024 y notificada el 5 de abril de 2024, donde declaró No Ha Lugar la solicitud de sentencia sumaria y dispuso que las siguientes determinaciones de hechos no estaban en controversia:

---

[8] Apéndice del recurso, págs. 60-61.
[9] Apéndice del recurso, págs. 63-66.
[10] Apéndice del recurso, pág. 68.
[11] Apéndice del recurso, págs. 255-272.

1. Triple-S emitió la póliza de propiedad comercial número 30-CP81086955-1 (en adelante, la "Póliza") a favor de Asociación de Residentes Condominio Portal de Sofía.
2. Bajo la Póliza número 30-CP81086955-1 se incluyen 26 edificios.
3. La Póliza estaba vigente con período de cubierta del 4 de marzo de 2017 al 4 de marzo de 2018.
4. La Póliza estaba vigente y en efecto a la fecha en que el [H]uracán María azotó la Isla y le provocó los daños a la Propiedad Asegurada.
5. El 20 de septiembre de 2017, el Huracán María pasó por Puerto Rico.
6. Triple-S acusó recibo de la reclamación el 7 de noviembre de 2017 y le asignó el número 1362319 a la reclamación ("Reclamación").
7. La Póliza define el término Causa de Pérdida Cubierta ("Covered Causes of Loss") como cualquier pérdida física directa, excepto que la pérdida esté excluida o limitada por la Póliza ("direct physical loss unless the loss is excluded or limited in this policy"[)].
8. Antes de presentar la Demanda de epígrafe, Triple-S había estimado las pérdidas de Condominio en $318,580.32, que se reducían a $66,980.20, luego de aplicar deducibles.[12]

También, el foro primario concluyó que había controversia sobre la deuda a pagar, esto como resultado de que las partes no habían estipulado cuantía por lo que determinó que no había entonces una cantidad determinable y líquida.[13] Adicional a ello, expresó que no se cumplía con ninguno de los tres requisitos establecidos en el Artículo 27.166 del Código de Seguros y que el argumento de los peticionarios adolecía de no demostrar ni fundamentar que en efecto no existía controversia sobre uno o varios aspectos de la reclamación. Por tal motivo, el TPI determinó que Triple-S no venía obligada a efectuar un pago parcial a favor de los peticionarios por una cuantía que no constituyó una oferta final y porque todas las partidas de la reclamación aún se encontraban en controversia.

Inconforme con la determinación del foro primario, el Consejo de Titulares acudió ante nosotros mediante el recurso de epígrafe y realizó los siguientes señalamientos de error:

(1) ERRÓ EL TPI AL NO ORDENAR EL PAGO COMO MÍNIMO DE LAS PARTIDAS QUE LA ASEGURADORA ENTENDIÓ PROCEDENTES EN EL AJUSTE DE LA RECLAMACIÓN, QUE CORRESPONDEN A UNA DEUDA LÍQUIDA Y EXIGIBLE

---

[12] Apéndice del recurso, pág. 277.
[13] Apéndice del recurso, pág. 283.

(2) ERRÓ EL TPI AL NO CONCEDER INTERESES POR MORA A FAVOR DEL CONDOMINIO PORTAL DE SOFÍA AL AMPARO DEL ARTÍCULO 1061 DEL CÓDIGO CIVIL APLICABLE A LA CAUSA DE ACCIÓN DEL EPÍGRAFE

(3) ERRÓ EL TPI AL NO CONCEDER INTERESES A FAVOR DEL CONDOMINIO PORTAL DE SOFÍA AL AMPARO DE LA REGLA 44.3(b) DE LAS REGLAS DE PROCEDIMIENTO CIVIL

(4) ERRÓ EL TPI AL NO CONCEDER HONORARIOS DE ABOGADOS A FAVOR DEL CONDOMINIO PORTAL DE SOFÍA AL AMPARO DEL ARTÍCULO 27.165 DEL CÓDIGO DE SEGUROS

Los recurridos sometieron su oposición de manera oportuna por lo que el recurso quedó perfeccionado y nos encontramos en posición de resolver. Nos expresamos a continuación.

**II**

**A**

El auto de *certiorari* es el vehículo procesal extraordinario "que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior." *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012), que cita a *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009); *García v. Padró*, 165 DPR 324, 334 (2005). Se trata de un recurso discrecional, para el cual existen unos parámetros que sirven de guía al momento de decidir si debemos expedir o denegar el auto. *IG Builders et al. v. BBVAPR*, *supra*. De esta forma, el asunto que se nos plantee en el recurso de *certiorari* debe tener cabida dentro de alguna de las materias reconocidas en la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1.

Particularmente, en cuanto a los procedimientos de apelación, *certiorari,* u otros procesos para revisar sentencias y resoluciones, la Regla 52.1 dispone lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar

órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciaros, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. […]

De acuerdo con la anterior disposición legal y la jurisprudencia interpretativa, nos corresponde realizar un análisis dual para determinar si se expide o no un auto de *certiorari.* Este examen consta de una parte objetiva y otra parte subjetiva. Por ello, en primer lugar, tenemos que analizar si la materia contenida en el recurso de *certiorari* tiene cabida dentro de una de las materias específicas establecidas en la Regla 52.1, toda vez que esta enumera taxativamente bajo qué materias, solamente, se podrá expedir el auto de *certiorari*. En aquellos en los que la materia no esté comprendida dentro de la regla, el tribunal revisor debe negarse a expedir el auto de *certiorari* automáticamente.

Superada esta etapa, corresponde analizar si bajo la discreción concedida a este tribunal revisor mediante la Regla 40 del Reglamento del Tribunal de Apelaciones, debemos o no expedir el auto de *certiorari*. 4 LPRA Ap. XXII-B, R. 40. A esos fines, la Regla 40 establece los criterios que debemos tomar en consideración para determinar si expedimos o no un auto de *certiorari*, como sigue:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

**B**

El mecanismo de sentencia sumaria está regido por la Regla 36 de Procedimiento Civil de 2009, 32 LPRA AP. V, R. 36, la cual dispone que se dictará una sentencia de manera sumaria únicamente cuando no existan controversias reales y sustanciales sobre los hechos materiales y pertinentes de la reclamación. Además, será necesario que el derecho aplicable así lo justifique.

En esencia, este mecanismo propicia la solución justa, rápida y económica de las controversias en las cuales la celebración de un juicio resulte innecesaria. *Const. José Carro v. Mun. de Dorado*, 186 DPR 113, 128 (2012) (citando a *Quest Diagnostics v. Mun. San Juan*, 175 DPR 994 (2009)). No obstante, el Tribunal Supremo ha dispuesto que aligerar la tramitación del caso no podrá soslayar el principio fundamental de alcanzar una solución justa. *García Rivera et al. v. Enríquez*, 153 DPR 323, 337-338 (2001). Así, el principio rector para su uso es el sabio discernimiento, ya que, al tratarse de un remedio discrecional, podría prestarse para despojar a un litigante de su derecho al debido proceso de ley. *Mgmt. Adm. Servs. Corp. v. E.L.A.*, 152 DPR 599, 611 (2000). En ese sentido, el Tribunal Supremo ha sido enfático en establecer que las decisiones discrecionales que toma el Tribunal de Primera Instancia no se revocarán, a menos que se demuestre que el foro primario abusó de su discreción. *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434 (2013).

Según nuestro ordenamiento jurídico, al dictar una sentencia sumaria, el tribunal deberá: (1) analizar los documentos anejados a la solicitud de sentencia sumaria, los documentos incluidos con la moción en oposición y aquellos que surjan del expediente del tribunal; y (2) determinar si el oponente controvirtió algún hecho material y esencial, o si hay alegaciones de la demanda que no han sido controvertidas o refutadas con otra evidencia. *Vera v. Dr. Bravo*, 161 DPR 308, 333 (2004). De esta forma, no procederá dictar una sentencia sumaria cuando: (1) existan hechos

materiales y esenciales controvertidos; (2) existan alegaciones afirmativas en la demanda que no han sido refutadas; (3) surja una controversia real sobre algún hecho material y esencial, de los mismos documentos que se acompañan con la solicitud; o (4) como cuestión de derecho, no proceda. *Vera v. Dr. Bravo*, *supra*, págs. 333-334.

Los foros revisores deberán evaluar la solicitud de sentencia sumaria *de novo*. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 116 (2015). En virtud de ello, el Tribunal de Apelaciones deberá: (1) examinar el expediente de manera más favorable hacia quien se opuso a la solicitud; (2) revisar que tanto la solicitud de sentencia sumaria como su oposición cumplan con los requisitos de forma provistos en la Regla 36 de las de Procedimiento Civil; y (3) evaluar si existen hechos en controversia y, de haberlos, cumplir con los criterios dispuestos por la Regla 36.4 de exponer concretamente cuáles hechos materiales encontró controvertidos y cuáles están incontrovertidos. *Meléndez González et al. v. M. Cuebas*, *supra*, pág. 118.

De concluir que en efecto los hechos están incontrovertidos, el foro revisor deberá evaluar si el foro primario aplicó correctamente el derecho en controversia. *Id.*, pág. 119. Es importante tener en cuenta, que, al hacer su determinación, el foro revisor debe cumplir con el estándar de la Regla 36.4. Así, de encontrar que existen hechos materiales en controversia, procederá a exponer concretamente cuáles fueron los hechos materiales controvertidos y cuáles fueron incontrovertidos. *Id.*; 32 LPRA Ap. V, R. 36.4.

## C

Es norma reiterada en nuestro ordenamiento jurídico que el contrato de seguros "está revestido de un alto interés público debido a su importancia, complejidad y efecto en la economía y la sociedad, razón por la cual ha sido ampliamente reglamentado por el Estado". *Maderas Tratadas v. Sun Alliance et al.*, 185 DPR 880, 896 (2012); *Jiménez López et al. v. SIMED*, 180 DPR 1, 9 (2010). A tales efectos, el Tribunal Supremo ha expresado que, a través del contrato de seguro, los aseguradores se

enfrentan a la carga económica de los riesgos que pudiesen ser provocados por un evento en específico, a cambio de una prima. *Coop. Ahorro y Créd. Oriental v. S.L.G.*, 158 DPR 714, 721 (2003). Esto dado que, a raíz del intercambio de la asunción de riesgo por la prima, nace la obligación de la aseguradora a responder por los daños sufridos en caso de que ocurra el evento específico. *Id.*

Por su parte, el Artículo 27.166 fue añadido al Código de Seguros, a través de enmiendas por la Ley Núm. 243-2018. En el inicio, los tribunales teníamos diferentes interpretaciones en cuanto a la aplicación retroactiva de la referida ley, en casos que surgían por reclamaciones ocurridas como consecuencia del Huracán María.[14] Sin embargo, no fue hasta principios del año 2022 que nuestro más alto foro tuvo ante sí una controversia donde tuvo la oportunidad de expresarse al respecto. De esta forma, en el caso de *Consejo Titulares v. MAPFRE*, 208 DPR 761 (2022), el Tribunal Supremo resolvió que sí se desprende del motivo de la Ley 247-2018 que la intención del legislador fue que la referida ley tuviese un efecto retroactivo. *Consejo Titulares v. MAPFRE, supra*, pág. 766. Ahora bien, en lo pertinente, el citado Artículo establece lo siguiente:

> Ante un estado de emergencia decretado por el Gobernador de Puerto Rico, la Oficina del Comisionado de Seguros estará facultada para ordenar a los aseguradores de seguros de propiedad a emitir pagos parciales o en adelantos al asegurado o reclamante, en cuanto a una o más partidas de las cuales no exista controversia, sin necesidad de esperar a la resolución final de la totalidad de la reclamación. En esos casos, los aseguradores cumplirán con los siguientes requisitos:
>
> (a) Cuando entre el asegurado o reclamante y asegurador no exista controversia sobre una o más partidas de la reclamación para las cuales el asegurado haya provisto al asegurador la documentación requerida en la póliza, el asegurador vendrá obligado a emitir el pago correspondiente a la partida o las partidas de la reclamación en que no exista controversia, independientemente de las otras partidas de la reclamación en que exista controversia. El pago deberá ser efectuado no más tarde de diez (10) días calendario, a partir de la fecha que el asegurado o reclamante haya notificado al asegurador, por escrito, sobre la aceptación de la

---

[14] *Véase* Medawar v. Multinational Insurance Company, KLAN202000931.

oferta de pago parcial o en adelanto. El pago será por la cantidad neta, luego del descuento aplicable por concepto de deducible o coaseguro estipulado en la póliza de dichas partidas.

(b) En toda oferta de pago parcial o en adelanto de la reclamación, el asegurador identificará de manera clara y conspicua que la oferta es un "Pago Parcial o En Adelanto de la Reclamación", incluyendo un informe por escrito que identifique la cubierta(s) para lo cual se hace la oferta y un desglose de la cuantía correspondiente a cada una de las partidas objeto de la oferta.

(c) Cualquier oferta de pago de una reclamación en la cual no se identifique la cubierta bajo la cual se realiza, o deje de desglosar las partidas y cuantía de daños o pérdidas a la cual corresponde, incluyendo la cantidad aplicable por concepto de deducible o coaseguro estipulado en la póliza, se considerará una práctica desleal en el ajuste de reclamación, sujeto a las penalidades del Artículo 27.260 de este Código.

(d) La aceptación de un pago parcial o en adelanto por el asegurado reclamante no constituirá, ni podrá ser interpretado, como un pago en finiquito o renuncia a cualquier derecho o defensa que éste pueda tener sobre los otros asuntos de la reclamación en controversia que no estén contenidos expresamente en la declaración de oferta de pago parcial o en adelanto.

(e) El pago parcial o en adelanto no constituirá una resolución final de la totalidad de la reclamación con arreglo a los Artículos 27.162 y 27.163 de este Código. 26 LPRA sec. 2716f.

Del mismo modo, el Tribunal Supremo ha dispuesto que una vez la aseguradora notifica el ajuste de la reclamación, "este constituye la postura institucional de [la aseguradora] frente a la reclamación de su asegurado". *Carpets & Rugs v. Tropical Reps*, *supra*, pág. 635. Esto, debido a que se trata de un documento emitido por la aseguradora producto de una investigación adecuada y un análisis detenido. Así, dado a que trata de un informe objetivo correspondiente a la procedencia de la reclamación, preparado por la aseguradora, **ésta no podrá retractarse del ajuste, salvo que haya mediado fraude por parte del reclamante** *Íd.* (Énfasis nuestro).

Este principio también ha sido avalado a través del Artículo 1123 del Código Civil de 1930, el cual establece que los acreedores no pueden ser

obligados a recibir las prestaciones parcialmente, a menos que el contrato diga lo contrario de manera expresa. 31 LPRA sec. 3173.[15] Sin embargo, el Artículo 1123 también dispone que "cuando la deuda tuviere una parte líquida y otra ilíquida, podrá exigir el acreedor, y el deudor puede hacer el pago de la primera, sin esperar a que se liquide la segunda". 31 LPRA sec. 3173.

Cónsono con lo anterior, la Regla XLVII, Artículo 7(d) del Reglamento 2080, expone que cuando no exista controversia sobre uno o varios aspectos de una reclamación, se deberá realizar el pago correspondiente. Reglamento del Código de Seguros, Reglamento 2080 de 6 de abril de 1976. Además, la citada regla establece que el pago se deberá realizar aun cuando exista una controversia en cuanto a otros aspectos de la reclamación, siempre que se pueda efectuar sin perjuicio de ambas partes.

Por otro lado, el Artículo 27.165 fue de igual manera añadido mediante enmienda, no obstante, por vía de la Ley Núm. 247-2018. El mencionado artículo expone lo siguiente:

(1) Al recaer una sentencia o decreto por cualquiera de los tribunales contra un asegurador y en favor de cualquier asegurado nombrado o el beneficiario designado bajo una póliza o contrato ejecutado por el asegurador, el Tribunal de Primera Instancia o, en el caso de una apelación en la que prevalezca el asegurado o beneficiario, el tribunal de apelación, deberá adjudicar o decretar contra el asegurador y a favor del asegurado o el abogado del beneficiario una suma razonable como honorarios o compensación por haber procesado la demanda en la que se obtuvo una recuperación.

(2) En cuanto a las demandas basadas en reclamos que surjan de pólizas de seguro de vida o contratos de anualidad, no se aplicará dicha tarifa de abogado permitido si tal demanda se inició antes de la expiración de sesenta (60) días después de la presentación de la prueba del reclamo debidamente presentada ante la aseguradora.

(3) Cuando se otorgue, la compensación u honorarios del abogado se incluirán en la sentencia o decreto dictado en el caso. 26 LPRA sec. 2716e.

---

[15] Actual Artículo 1119 del Código Civil de 2020, Ley Núm. 55-2020.

**D**

Por otro lado, las partes en un contrato están forzadas a actuar según lo expresamente pactado. Si en su ejecución incurren en dolo, negligencia o morosidad, los contratantes están obligados a responder por los daños y perjuicios que resulten de su conducta. 31 LPRA sec. 3018.

La teoría general, en materia de Obligaciones y Contratos, establece que la mora constituye el cumplimiento tardío de una obligación. J. Castán Tobeñas, *Derecho Civil Español, Común y Foral*, 16ta ed., Madrid, Ed. Reus S.A., 1992, Tomo III, 236-237.  Se incurre en mora desde el momento en que el acreedor exige al deudor el cumplimiento de una obligación consistente en entregar o hacer una cosa. 31 LPRA sec. 3017, *Rodríguez Sanabria v. Soler Vargas*, 135 DPR 779, 783 (1994). Como norma, se considera que el deudor está en mora cuando: (1) se trata de una obligación positiva de dar o hacer; (2) ésta es líquida, exigible y está vencida; (3) el deudor retarde, culpablemente, el cumplimiento de su obligación y; (4) el acreedor requiera el pago al deudor, judicial o extrajudicialmente. J. Castán Tobeñas, *op cit.*, págs. 238-240.

Cónsono a lo anterior, el Artículo 1061 del Código Civil, 31 LPRA sec. 3025, contempla la posibilidad de imponer intereses por mora*.* Expresamente dispone lo siguiente:

> Si la obligación consistiere en el pago de una cantidad de dinero y el deudor incurriere en mora, la indemnización de daños y perjuicios, no habiendo pacto en contrario, consistirá en el pago de los intereses convenidos, y a falta de convenio, en el interés legal.
>
> Mientras que no se fije otro por el Gobierno, se considerará como legal el interés del seis por ciento (6%) al año.

La imposición de intereses por mora se concede como una indemnización a la parte afectada a causa del retraso culposo en el pago de una deuda.  Los intereses por mora "[n]o constituyen parte integrante, inherentemente inseparable, de la obligación principal, sino que son considerados como una indemnización independiente de daños y perjuicios impuesta como penalidad por la demora en el pago." *Rivera v. Crescioni*, 77 DPR 47, 55-56 (1954).

La doctrina vigente dispone que los intereses por mora constituyen un derecho personal del acreedor, el cual puede tomarse como renunciado si no se apela la omisión de consignarlos. *P. R. & Ame. Ins. Co. v. Tribunal Superior*, 84 DPR 621, 623 (1962). De igual forma, un tribunal de instancia puede imponer el pago de intereses por mora, aun cuando los mismos no hayan sido solicitados por la parte interesada. *Fuentes v. Hull Dobbs Co.,* 88 DPR 562, 571 (1963).

El interés por mora se distingue del interés legal. La Regla 44.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 44.3, regula lo concerniente a la fijación del interés legal, tanto post sentencia como por temeridad. Esta disposición establece lo siguiente:

> (a) Se incluirán intereses al tipo que fije por reglamento la Junta Financiera de la Oficina del Comisionado de Instituciones Financieras y que esté en vigor al momento de dictarse la sentencia, en toda sentencia que ordena el pago de dinero, a computarse sobre la cuantía de la sentencia desde la fecha en que se dictó la sentencia y hasta que ésta sea satisfecha, incluyendo costas y honorarios de abogados. El tipo de interés se hará constar en la sentencia.

> La Junta fijará y revisará periódicamente la tasa de interés por sentencia tomando en consideración el movimiento en el mercado y con el objetivo de desalentar la radicación de demandas frívolas, evitar la posposición irrazonable en el cumplimiento de las obligaciones existentes y estimular el pago de las sentencias en el menor tiempo posible.

> (b) El tribunal también impondrá a la parte que haya procedido con temeridad el pago de interés al tipo que haya fijado la Junta en virtud del inciso (a) de esta regla y que esté en vigor al momento de dictarse la sentencia desde que haya surgido la causa de acción **en todo caso de cobro de dinero y desde la radicación de la demanda, en caso de daños y perjuicios, y hasta la fecha en que se dicte sentencia a computarse sobre la cuantía de la sentencia,** excepto cuando la parte demandada sea el Estado Libre Asociado de Puerto Rico, sus municipios, agencias, instrumentalidades o funcionarios en su carácter oficial. El tipo de interés se hará constar en la sentencia. (Énfasis nuestro.)

El interés post sentencia se refiere al tipo de interés que se impone a favor de la parte victoriosa en todas las sentencias que ordenen el pago de dinero. Éste se computa sobre la cuantía de la sentencia, incluso las costas y los honorarios de abogado, y se fija desde la fecha en que se dicte la sentencia hasta que se satisface. Su imposición es mandatoria a toda

parte perdidosa sin distinción alguna. *Gutiérrez v. A.A.A.,* 167 DPR 130, 136-137 (2006).

El interés por temeridad se impone cuando convergen los dos requisitos siguientes: **que la parte haya procedido temerariamente y se trate de un caso sobre cobro de dinero o daños y perjuicios.** Éste se fija sobre la suma principal de la sentencia dictada sin incluir las costas ni honorarios de abogado. El interés por temeridad se calcula dependiendo de la reclamación de que se trate; en los casos de cobro de dinero se computa desde que surge la causa de acción y en el caso de daños y perjuicios a partir de la presentación de la demanda. *Id.*, pág. 137.

**III**

Luego de evaluado el expediente junto a su derecho aplicable y jurisprudencia interpretativa, resolvemos que el foro de instancia erró al declarar No Ha Lugar la solicitud de sentencia sumaria parcial presentada por los peticionarios. Por tal motivo, y en aras de evitar un fracaso a la justicia, expedimos el presente recurso. Discutimos a continuación.

Como foro intermedio, al enfrentarnos al mecanismo extraordinario de sentencia sumaria nos corresponde realizar una revisión *de novo* examinando la solicitud, su oposición y la totalidad del expediente. Efectuada la tarea, llegamos a la conclusión de que las determinaciones de hecho realizadas por el foro primario están avaladas por la evidencia que obra en el expediente. Sin embargo, añadiríamos el hecho de que Triple-S realizó un estimado más reciente, aproximadamente para el año 2023, a través de la compañía Benj. Acosta Independent Insurance Adjusters – All Lines la cual sumó la cantidad de $717,388.34 y fue ajustada a $419,544.41 luego de las deducciones aplicables. Este sería el único hecho que el foro primario halló en controversia con el cual no estamos de acuerdo. De igual manera, diferimos del análisis realizado por el TPI y concluimos que hubo error en la aplicación del derecho.

Al tomar en consideración la exposición de motivos de la Ley Núm. 243-2018, la cual añadió el Artículo 27.166 del Código de Seguros, vemos

que fue "con el propósito de estimular pagos a los asegurados o reclamantes afectados para que puedan comenzar los arreglos para la reconstrucción o reparación de sus residencias y para iniciar la operación de los comercios, ayudando así a reactivar nuestra economía con mayor prontitud". Ley Núm. 243-2018. Toda vez que el estimado realizado por Triple-S y notificado al Consejo de Titulares constituyó un ajuste y, por consiguiente, un reconocimiento de deuda a la luz de lo resuelto en *Feliciano Aguayo v. MAPFRE*, 207 DPR 138 (2021), cantidad por la cual no podrá retractarse. *Carpets & Rugs v. Tropical Reps.*, *supra*, pág. 635.

Existe controversia sobre la totalidad de los daños para realizar una oferta final con el propósito de ponerle fin a la reclamación. No obstante, no existe controversia sobre el estimado y su ajuste puesto que fue realizado por la misma aseguradora y a la luz de *Carpets & Rugs v. Tropical Reps*, *supra*, este representa un análisis detenido y una investigación adecuada. Triple-S realizó un estimado que luego de los descuentos correspondientes se ajustó a ser $419,544.41. El Consejo de Titulares solicita el pago por la cantidad de $419,544.41 en concepto de adelanto de reclamación. No existe controversia sobre esta cuantía, por tanto, estamos ante una deuda líquida y exigible de modo que procede su pago inmediato. No obstante, el TPI basó su determinación de que había controversia sobre la cantidad en que los peticionarios no habían presentado evidencia alguna que estableciera habían aceptado el monto del estimado. Pero, tomando en cuenta el propósito de la Ley que introdujo el Artículo 27.166 del Código de Seguros que permite el adelanto o pago parcial, resolveríamos en contra del espíritu de esta al condicionar su pago a una aceptación por escrito. Además, podríamos equiparar el hecho de que los peticionarios exigen el pago de este como una aceptación inequívoca. Ilustrado lo anterior, queda atendido el primer señalamiento de error realizado por los peticionarios.

Atendido este primero, avanzamos a los restantes tres que se resumen en que el TPI erró al no otorgar la imposición de pago de honorarios e intereses por mora y temeridad. En cuanto al segundo

señalamiento de error, dirigido a los intereses por mora bajo lo establecido en el Artículo 1061 del Código Civil de 1930, no podemos concluir que los recurridos hayan incurrido en mora. Esto por razón de que el tribunal había declarado en dos ocasiones que no procedía el pago adelantado por entender que aún había controversia sobre el monto de la deuda. Por tanto, Triple-S aún no había recibido orden de hacer pago alguno como para poder incurrir en un retardo culpable. De igual manera, referente al tercer señalamiento de error dirigido a la concesión de intereses al amparo de la Regla 44.3(b) de Procedimiento Civil, concluimos que la mencionada Regla no es de aplicación a la controversia que nos ocupa. Ello porque esta explícitamente menciona que corresponde en casos de cobro de dinero o daños y perjuicios y estamos ante uno de incumplimiento de contrato. Por tanto, estos dos errores no se cometieron.

No obstante, encontramos que sí se cometió el cuarto y último señalamiento de error por lo que procede el pago de los honorarios de abogado en los que han incurrido los peticionarios hasta el momento, según establecido en el Artículo 27.165 del Código de Seguros.

**IV**

Por los fundamentos expuestos expedimos el auto de *certiorari* y revocamos la resolución recurrida para ordenar el pago por la cantidad de $419,544.41 más una suma razonable en concepto de honorarios correspondientes a ser determinada por el TPI de conformidad a lo dispuesto en el Artículo 27.165 del Código de Seguros, *supra*, y se ordena la continuación de los procedimientos en el foro primario según lo aquí dispuesto.

Notifíquese.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones