ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| CONSEJO DE TITULARES DEL CONDOMINIO PASEO HORIZONTE I, ATTENURE HOLDINGS TRUST 2 Y HRH PROPERTY HOLDINGS LLC<br>Apelantes<br><br>V.<br><br>MAPFRE PRAICO INSURANCE COMPANY<br>Apelados<br>\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* | TA2025AP00074 consolidado con: | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Salinas<br><br>Civil Núm. SA2019CV00292<br><br>Sobre: Seguros incumplimiento aseguradoras huracanes Irma/María, incumplimiento de contrato<br>\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* |
| CONSEJO DE TITULARES DEL CONDOMINIO PASEO HORIZONTE II, ATTENURE HOLDINGS TRUST 2 Y HRH PROPERTY HOLDINGS LLC<br><br>Apelantes<br><br>V.<br><br>MAPFRE PRAICO INSURANCE COMPANY<br>Apelado<br>\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* | TA2025AP00079 consolidado con: | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Salinas<br><br>Civil Núm. SA2019CV00293<br><br>Sobre: Seguros incumplimiento aseguradoras huracanes Irma/María, incumplimiento de contrato<br>\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* |
| CONSEJO DE TITULARES DEL CONDOMINIO PASEO HORIZONTE I, ATTENURE HOLDINGS TRUS 2 Y HRH PROPERTY HOLDINGS LLC,<br>Recurridos<br><br>v.<br><br>MAPFRE PRAICO INSURANCE COMPANY<br><br>Peticionario | TA2025CE00222 consolidado con: | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Salinas<br><br>Civil Núm. SA2019CV00292 CONSOLIDADO CON SA2019CV00293<br><br>Sobre: Daños, Seguros, Incumplimiento Aseguradoras Huracanes Irma / María, Sentencia |

| | | |
|---|---|---|
| CONSEJO DE TITULARES DEL CONDOMINIO PASEO HORIZONTE I, ATTENURE HOLDINGS TRUS 2 Y HRH PROPERTY HOLDINGS LLC, Recurridos v. MAPFRE PRAICO INSURANCE COMPANY Peticionario | TA2025CE00225 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Salinas Civil Núm. SA2019CV00292 CONSOLIDADO CON SA2019CV00293 Sobre: Daños, Seguros, Incumplimiento Aseguradoras Huracanes Irma / María, Sentencia Declaratoria |

Panel integrado por su presidenta, la Jueza Ortiz Flores, la Jueza Brignoni Mártir y el Juez Candelaria Rosa

Ortiz Flores, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 28 de agosto de 2025.

Comparece ante este foro intermedio el Consejo de Titulares del Condominio Paseo Horizonte I y el Consejo de Titulares del Condominio Paseo Horizonte II (en conjunto, apelantes; recurridos) mediante recurso de apelación TA2025AP00074 consolidado con el recurso TA2025AP00079 y nos solicitan que revisemos y modifiquemos la *Sentencia Parcial* emitida por el Tribunal de Primera Instancia, Sala Superior de Salinas (TPI) el 25 de abril de 2025 y notificada en esta misma fecha. En el referido dictamen, el TPI declaró Ha Lugar la *Solicitud de Sentencia Sumaria Parcial* presentada por los apelantes.

Por otro lado, la aseguradora Mapfre Praico Insurance Company (MAPFRE; apelada; peticionaria) comparece ante nosotros mediante el auto de *certiorari* TA2025CE00222 consolidado con el auto TA2025CE00225 y nos solicita que revisemos la *Resolución Interlocutoria* emitida por el TPI el 2 de junio de 2025 la cual fue notificada al día siguiente 3 de junio de 2025. En la decisión aludida el TPI declaró Ha Lugar el memorando de costas presentado por los apelantes.

Adelantamos que, por los fundamentos que expondremos a continuación, confirmamos la *Sentencia Parcial* apelada y acordamos expedir el recurso de *certiorari* y revocar la *Resolución Interlocutoria* recurrida sin trámite ulterior, según lo dispuesto en la Regla 7 (B) (5) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 7 (B) (5)[1].

I

A raíz de los estragos provocados por el paso del Huracán María en la isla, el Condominio Paseo del Horizonte I y el Condominio Paseo del Horizonte II sufrió daños como muchas otras estructuras del país. Como corolario de lo anterior, el Consejo de Titulares de ambos condominios respectivamente, reclamaron la indemnización correspondiente a su aseguradora Mapfre Praico Insurance Company (MAPFRE; apelada). Dicho caso tuvo su comienzo el 4 de septiembre de 2019 mediante la presentación de una *Demanda* por concepto de incumplimiento de contrato de seguros.[2] Allí solicitaron que el TPI ordenara a MAPFRE a realizar el pago a favor de las apelantes por una cantidad no menor de 1,198,075. Referente a lo anterior, MAPFRE presentó el 14 de febrero de 2020 una *Moción de Desestimación y Solicitud de Sentencia Sumaria*,[3] la cual fue posteriormente declarada No Ha Lugar el 29 de junio de 2021 y notificada al día siguiente.[4] En el ínterin, los apelantes presentaron ante el tribunal de instancia una *Moción de Sentencia Sumaria Parcial*.[5] Esta fue declarada Ha Lugar la misma fecha de 29 de junio de 2021 y allí el TPI ordenó a la apelada a pagar la cantidad de $254,412.23 a favor de los apelantes.[6] No obstante, dicho dictamen fue revocado mediante la *Sentencia* emitida con el alfanumérico KLAN202100623[7] a raíz de un recurso de apelación presentado por MAPFRE.

---

[1] Esta regla nos permite preterir escritos o procedimientos en cualquier caso ante nuestra consideración, para su eficiente trámite.
[2] SUMAC, Entrada 1 en SA2019CV00292.
[3] SUMAC, Entrada 17 en SA2019CV00292.
[4] SUMAC, Entrada 51 en SA2019CV00292.
[5] SUMAC, Entrada 30 en SA2019CV00292.
[6] SUMAC, Entrada 52 en SA2019CV00292.
[7] SUMAC, Entrada 77 en SA2019CV00292.

Cumplido con el mandato del Tribunal de Apelaciones, se comenzó un proceso de descubrimiento de prueba. Sin embargo, el 1 de noviembre de 2023 ambas partes presentaron al tribunal una *Moción Conjunta Informativa Sobre Conversaciones Transaccionales Y En Solicitud De Paralización De Los Procedimientos* donde notificaron al foro primario que estaban en conversación para llegar a acuerdos transaccionales de buena fe, en aras de resolver todas las controversias del pleito, por lo que solicitaron la paralización de los procedimientos por un término no menor de setenta y cinco (75) días.[8] Dicho término fue concedido tal cual se solicitó.[9] A pesar de los esfuerzos, las partes notificaron que no pudieron llegar a consenso alguno así que decidieron continuar con los procedimientos ante el tribunal.[10]

Así las cosas, los apelantes entonces presentaron el 10 de marzo de 2025 una *Solicitud de Sentencia Sumaria Parcial* donde solicitaron al TPI que ordenara a la apelada a realizar el pago a favor de los apelantes por la cantidad total de $201,075.34 para el Condominio Paseo Horizonte I, y $235,703.40 para el Condominio Paseo Horizonte II en base a los ajustes de estimado mínimo de daños realizado por MAPFRE.[11] En ambas sumas solicitadas, los apelantes incluyeron intereses por mora computados desde el 4 de septiembre de 2019, fecha en que se presentó la *Demanda*. MAPFRE, oportunamente, presentó su oposición y arguyó que el estimado cursado no constituía un reconocimiento de deuda por lo que dichas cantidades no eran deudas líquidas ni exigibles.[12]

El foro primario emitió *Sentencia Parcial* al respecto y determinó que los siguientes hechos no estaban en controversia:

1. MAPFRE emitió una póliza comercial, Póliza Núm. 54-CP2000004866-05.
2. MAPFRE emitió una póliza comercial, Póliza Núm. 54-CP2000004867-06.

---

[8] SUMAC, Entrada 150 en SA2019CV00292.
[9] SUMAC, Entrada 151 en SA2019CV00292.
[10] SUMAC, Entrada 158 en SA2019CV00292.

[11] SUMAC, Entrada 167 en SA2019CV00292.
[12] SUMAC, Entrada 169 en SA2019CV00292.

3. El 14 de mayo de 2021, MAPFRE, por conducto del ajustador Omar Acevedo, emitió su ajuste final de la reclamación presentada por el Consejo de Titulares del Cond. Paseo Horizonte I.
4. De acuerdo con este ajuste final, Mapfre, el "net cost to pay" a Paseo Horizonte I, es la cantidad mínima de $147,984.028.
5. El 14 de mayo de 2021, MAPFRE, por conducto de su ajustador Omar Acevedo, emitió su ajuste final de la reclamación presentada por el Consejo de Titulares del Cond. Paseo Horizonte II.
6. De acuerdo con Mapfre, el "net cost to pay" a Paseo Horizonte I, es la cantidad mínima de $173,468.9910.
7. La cantidad de $147,984.02, representa una deuda líquida, exigible y pagadera a Paseo Horizonte I.
8. La cantidad de $173,468.99, representa una deuda líquida, exigible y pagadera a Paseo Horizonte II.[13]

Además, declaró Ha Lugar la sentencia sumaria y ordenó lo siguiente:

El Tribunal declara HA LUGAR la Solicitud de Sentencia Sumaria Parcial, presentada por el Consejo de Titulares del Condominio Paseo Horizonte I, el Consejo de Titulares del Condominio Paseo Horizonte II, Attenure Holdings Trust 2 y HRB Property Holdings, LLC., consecuentemente, se ordena lo siguiente a MAPFRE PRAICO Insurance Company:

✓ Se Ordena a MAPFRE pagar al Consejo de Titulares del Condominio Paseo Horizonte I, la suma de $147,984.02, en concepto de ajuste mínimo.
✓ Se Ordena a MAPFRE pagar al Consejo de Titulares del Condominio Paseo Horizonte II, la suma de $173,968.99, en concepto de ajuste mínimo.
✓ Se Ordena el pago de los intereses legales que se acumulen hasta la fecha del completo y total pago de esta Sentencia Parcial, a razón de 8.75% anual. Regla 44.3 de Procedimiento Civil.[14]

Inconformes con el dictamen emitido, los apelantes acuden ante nosotros mediante el recurso de epígrafe y exponen el siguiente único señalamiento de error:

Erró el Tribunal de Primera Instancia al dejar de conceder los intereses por mora a favor de la parte asegurada, al amparo del Artículo 1061 del Código Civil de 1930, aplicable a la causa de acción del epígrafe.

---

[13] SUMAC, Entrada 178 en SA2019CV00292, págs. 2-3.
[14] SUMAC, Entrada 178 en SA2019CV00292, págs. 10-11.

Oportunamente la parte apelada compareció mediante escrito de *Alegato de Mapfre en Oposición a Recursos de Apelación Consolidados* y dicho recurso de apelación consolidado quedó debidamente perfeccionado.

Por otro lado, luego de declarada Ha Lugar la emitida sentencia sumaria parcial, los apelantes presentaron dentro del término jurisdiccional establecido el memorando de costas correspondiente.[15]   Las cuantías reclamadas fueron desglosadas de la siguiente manera:

| Fecha | Descripción | Cuantía |
|---|---|---|
| 09/04/2019 | Internal Revenue Stamp: Complaint Filing Paseo Horizonte I | $90.00 |
| 9/04/2019 | Internal Revenue Stamp: Complaint Filing Paseo Horizonte II | $90.00 |
| 09/17/2019 | Postage Extrajudicial Notices to Insurers | $6.80 |
| 03/10/2020 | Postage | $21.15 |
| 3/12/2021 | Principled Engineering Consultants LS-2139 Paseo Horizonte I report | $1,067.50 |
| 3/12/2021 | Principled Engineering Consultants LS-2142 Paseo Horizonte II report | $1,067.50 |
| 7/7/2021 | Principled Engineering Consultants LS-2139 Paseo Horizonte I inspection | $1,473.66 |
| 7/7/2021 | Principled Engineering Consultants LS-2142 Paseo Horizonte II inspection | $1,473.66 |
| 05/31/2023 | Copying | $23.10 |
| 06/20/2023 | Delivery services/messengers | $30.00 |
| 06/26/2023 | Sellos Rentas Internas | $102.00 |
| 08/11/2023 | Verbatim Reporting Puerto Rico 8/11/2023, 10478 Ing. William Rosario Charriez | $1,582.88 |
| 10/8/2024 | Crespo and Rodriguez, Inc. September 30, 2024 services for deposition of Omar Acevedo Aviles | $ 1,163.14 |
| | **TOTAL** | **$ 8,191.39** |

El foro primario concedió a MAPFRE el término de 10 días para expresar su posición.[16]   Esta compareció dentro del periodo establecido mediante escrito titulado *Oposición a Memorando de Costas*.[17]   Allí la apelada argumentó que no procedía la imposición de costas puesto que el dictamen emitido no ponía fin al pleito ni atendía ninguna de las causas de acción de los apelantes.   Además, impugnó los gastos atribuidos a Principled Engineering Consultants por tratarse de informes periciales que no guardan relación con la evaluación de los daños que sufrieron los

---

[15] SUMAC, Entrada 186 en SA2019CV00292.
[16] SUMAC, Entrada 187 en SA2019CV00292.
[17] SUMAC, Entrada 190 en SA2019CV00292, págs. 1-6.

condominios. También impugnó el costo de las deposiciones del Ingeniero William Rosario Charriez y el Sr. Omar Acevedo Avilés al alegar que no eran recobrables, puesto que las apelantes nunca utilizaron ni citaron dichas deposiciones en su solicitud de sentencia sumaria. Por último, impugnó el resto de los gastos por tratarse de gastos de oficina de los cuales igualmente alegó no son recobrables.

El 2 de junio de 2025 el TPI emitió *Resolución Interlocutoria* donde declaró Ha Lugar el Memorando de Costas presentado por los apelantes.[18] Inconforme con lo anterior, MAPFRE sometió una *Moción de Reconsideración*,[19] esta fue declarada No Ha Lugar.[20] Aún inconforme con lo resuelto, la apelada comparece mediante el auto de *certiorari* consolidado y esgrime el siguiente señalamiento de error:

> Erró el Tribunal de Primera Instancia al conceder las costas solicitadas por los Recurridos, a pesar de que la Sentencia Parcial no dispone de ninguna de sus causas de acción plasmadas en las demandas que presentaron y de que ninguno de los gastos que informó fueron incurridos en la solicitud de los remedios obtenidos y concedidos a su favor en dicha sentencia.

Como adelantáramos, hemos examinado el recurso presentado; y en ánimo de promover el «más justo y eficiente despacho» del asunto ante nuestra consideración, optamos por prescindir de los términos y escritos ulteriores de conformidad con la Regla 7 (B) (5) del Reglamento del Tribunal de Apelaciones, *supra*.[21]

## II

## A

El mecanismo de sentencia sumaria está regido por la Regla 36 de Procedimiento Civil de 2009, 32 LPRA AP. V, R. 36, la cual dispone que se

---

[18] SUMAC, Entrada 193 en SA2019CV00292.
[19] SUMAC, Entrada 194 en SA2019CV00292.
[20] SUMAC, Entrada 199 en SA2019CV00292.
[21] La citada norma procesal establece lo siguiente: «El Tribunal de Apelaciones tendrá la facultad para prescindir de términos no jurisdiccionales, escritos, notificaciones o procedimientos específicos en cualquier caso ante su consideración, con el propósito de lograr su más justo y eficiente despacho, y proveer el más amplio acceso al tribunal, de forma que no se impida impartir justicia apelativa a los ciudadanos». 4 LPRA Ap. XXII-B, R. 7 (B) (5).

dictará una sentencia de manera sumaria únicamente cuando no existan controversias reales y sustanciales sobre los hechos materiales y pertinentes de la reclamación. Además, será necesario que el derecho aplicable así lo justifique.

En esencia, este mecanismo propicia la solución justa, rápida y económica de las controversias en las cuales la celebración de un juicio resulte innecesaria. *Const. José Carro v. Mun. de Dorado*, 186 DPR 113, 128 (2012) que cita a *Quest Diagnostics v. Mun. San Juan*, 175 DPR 994 (2009). No obstante, el Tribunal Supremo ha dispuesto que aligerar la tramitación del caso no podrá soslayar el principio fundamental de alcanzar una solución justa. *García Rivera et al. v. Enríquez*, 153 DPR 323, 337-338 (2001). Así, el principio rector para su uso es el sabio discernimiento, ya que, al tratarse de un remedio discrecional, podría prestarse para despojar a un litigante de su derecho al debido proceso de ley. *Mgmt. Adm. Servs. Corp. v. E.L.A.*, 152 DPR 599, 611 (2000). En ese sentido, el Tribunal Supremo ha sido enfático en establecer que las decisiones discrecionales que toma el Tribunal de Primera Instancia no se revocarán, a menos que se demuestre que el foro primario abusó de su discreción. *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434 (2013).

Según nuestro ordenamiento jurídico, al dictar una sentencia sumaria, el tribunal deberá: (1) analizar los documentos anejados a la solicitud de sentencia sumaria, los documentos incluidos con la moción en oposición y aquellos que surjan del expediente del tribunal; y (2) determinar si el oponente controvirtió algún hecho material y esencial, o si hay alegaciones de la demanda que no han sido controvertidas o refutadas con otra evidencia. *Vera v. Dr. Bravo*, 161 DPR 308, 333 (2004). De esta forma, no procederá dictar una sentencia sumaria cuando: (1) existan hechos materiales y esenciales controvertidos; (2) existan alegaciones afirmativas en la demanda que no han sido refutadas; (3) surja una controversia real sobre algún hecho material y esencial, de los mismos

documentos que se acompañan con la solicitud; o (4) como cuestión de derecho, no proceda. *Vera v. Dr. Bravo*, *supra*, págs. 333-334.

Los foros revisores deberán evaluar la solicitud de sentencia sumaria *de novo*. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 116. En virtud de ello, el Tribunal de Apelaciones deberá: (1) examinar el expediente de manera más favorable hacia quien se opuso a la solicitud; (2) revisar que tanto la solicitud de sentencia sumaria como su oposición cumplan con los requisitos de forma provistos en la Regla 36 de las de Procedimiento Civil; y (3) evaluar si existen hechos en controversia y, de haberlos, cumplir con los criterios dispuestos por la Regla 36.4 de exponer concretamente cuáles hechos materiales encontró controvertidos y cuáles están incontrovertidos. *Meléndez González et al. v. M. Cuebas*, *supra*, pág. 118.

De concluir que en efecto los hechos están incontrovertidos, el foro revisor deberá evaluar si el foro primario aplicó correctamente el derecho en controversia. *Id.*, pág. 119. Es importante tener en cuenta, que, al hacer su determinación, el foro revisor debe cumplir con el estándar de la Regla 36.4. Así, de encontrar que existen hechos materiales en controversia, procederá a exponer concretamente cuáles fueron los hechos materiales controvertidos y cuáles fueron incontrovertidos. *Id.*; 32 LPRA Ap. V, R. 36.4.

**B**

En un contrato las partes están forzadas a actuar según lo expresamente pactado. Si en su ejecución incurren en dolo, negligencia o morosidad, los contratantes están obligados a responder por los daños y perjuicios que resulten de su conducta. 31 LPRA sec. 3018.

La teoría general, en materia de Obligaciones y Contratos, establece que la mora constituye el cumplimiento tardío de una obligación. J. Castán Tobeñas, *Derecho Civil Español, Común y Foral*, 16ta ed., Madrid, Ed. Reus S.A., 1992, Tomo III, 236-237. Se incurre en mora desde el momento en que el acreedor exige al deudor el cumplimiento de una obligación

consistente en entregar o hacer una cosa. 31 LPRA sec. 3017, *Rodríguez Sanabria v. Soler Vargas*, 135 DPR 779, 783 (1994). Como norma, se considera que el deudor está en mora cuando: (1) se trata de una obligación positiva de dar o hacer; (2) ésta es líquida, exigible y está vencida; (3) el deudor retarde, culpablemente, el cumplimiento de su obligación y; (4) el acreedor requiera el pago al deudor, judicial o extrajudicialmente. J. Castán Tobeñas, *op cit.*, págs. 238-240.

Cónsono a lo anterior, el Artículo 1061 del Código Civil, 31 LPRA sec. 3025, contempla la posibilidad de imponer intereses por mora*.* Expresamente dispone:

> Si la obligación consistiere en el pago de una cantidad de dinero y el deudor incurriere en mora, la indemnización de daños y perjuicios, no habiendo pacto en contrario, consistirá en el pago de los intereses convenidos, y a falta de convenio, en el interés legal.
>
> Mientras que no se fije otro por el Gobierno, se considerará como legal el interés del seis por ciento (6%) al año.

La imposición de intereses por mora se concede como una indemnización a la parte afectada a causa del retraso culposo en el pago de una deuda. Los intereses por mora:

> […] no constituyen parte integrante, inherentemente inseparable, de la obligación principal, sino que son considerados como una indemnización independiente de daños y perjuicios impuesta como penalidad por la demora en el pago. *Rivera v. Cerscioni*, 77 DPR 47, 56 (1954).

La doctrina vigente dispone que los intereses por mora constituyen un derecho personal del acreedor, el cual puede tomarse como renunciado si no se apela la omisión de consignarlos. *P. R. & Ame. Ins. Co. v. Tribunal Superior*, 84 DPR 621, 623 (1962). De igual forma, un tribunal de instancia puede imponer el pago de intereses por mora, aun cuando los mismos no hayan sido solicitados por la parte interesada. *Fuentes v. Hull Dobbs Co.,* 88 DPR 562, 571 (1963).

El interés por mora se distingue del interés legal*.* La Regla 44.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 44.3, regula lo concerniente a la

fijación del interés legal, tanto post sentencia como por temeridad. Esta disposición establece que:

(a) Se incluirán intereses al tipo que fije por reglamento la Junta Financiera de la Oficina del Comisionado de Instituciones Financieras y que esté en vigor al momento de dictarse la sentencia, en toda sentencia que ordena el pago de dinero, a computarse sobre la cuantía de la sentencia desde la fecha en que se dictó la sentencia y hasta que ésta sea satisfecha, incluyendo costas y honorarios de abogados. El tipo de interés se hará constar en la sentencia.

La Junta fijará y revisará periódicamente la tasa de interés por sentencia tomando en consideración el movimiento en el mercado y con el objetivo de desalentar la radicación de demandas frívolas, evitar la posposición irrazonable en el cumplimiento de las obligaciones existentes y estimular el pago de las sentencias en el menor tiempo posible.

(b) El tribunal también impondrá a la parte que haya procedido con temeridad el pago de interés al tipo que haya fijado la Junta en virtud del inciso (a) de esta regla y que esté en vigor al momento de dictarse la sentencia desde que haya surgido la causa de acción en todo caso de cobro de dinero y desde la radicación de la demanda, en caso de daños y perjuicios, y hasta la fecha en que se dicte sentencia a computarse sobre la cuantía de la sentencia, excepto cuando la parte demandada sea el Estado Libre Asociado de Puerto Rico, sus municipios, agencias, instrumentalidades o funcionarios en su carácter oficial. El tipo de interés se hará constar en la sentencia.

El interés post sentencia se refiere al tipo de interés que se impone a favor de la parte victoriosa en todas las sentencias que ordenen el pago de dinero. Éste se computa sobre la cuantía de la sentencia, incluso las costas y los honorarios de abogado, y se fija desde la fecha en que se dicte la sentencia hasta que se satisface. Su imposición es mandatoria a toda parte perdidosa sin distinción alguna. *Gutiérrez v. A.A.A.,* 167 DPR 130, 136-137 (2006).

El interés por temeridad se impone cuando convergen los dos requisitos siguientes: **que la parte haya procedido temerariamente y se trate de un caso sobre cobro de dinero o daños y perjuicios.** Éste se fija sobre la suma principal de la sentencia dictada sin incluir las costas ni honorarios de abogado. El interés por temeridad se calcula dependiendo de la reclamación de que se trate; en los casos de cobro de dinero se computa desde que surge la causa de acción y en el caso de daños y perjuicios a partir de la presentación de la demanda. *Id.*, pág. 137.

**C**

El auto de *certiorari* es el vehículo procesal extraordinario "que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior". *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012). Se trata de un recurso caracterizado principalmente por la discreción encomendada al tribunal revisor para decidir si debe expedir o denegar el auto. *Id.* Al respecto, los recursos de *certiorari* sobre resoluciones post-sentencia deben evaluarse bajo los parámetros establecidos en la Regla 52.1 de Procedimiento Civil, *supra*, y la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40 (Regla 40). La Regla 52.1 de Procedimiento Civil dispone que de ordinario no proceden los recursos de *certiorari* para revisar resolución y órdenes interlocutorias, salvo que se trate de la revisión de órdenes bajo las Reglas 56 o 57, denegatoria de una moción de carácter dispositivo. Sin embargo, por excepción, se permite la revisión de órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurre de una determinación sobre admisibilidad de testigos de hecho o peritos, asuntos sobre privilegios evidenciarios, anotaciones de rebeldía, casos de familia, casos de interés público o en cualquier otra situación que esperar a la apelación constituiría un fracaso irremediable de la justicia.

Como es sabido, debido a que la discreción judicial no opera en el vacío, *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 596 (2011), la Regla 40 esboza los criterios que este tribunal revisor debe considerar al determinar la expedición o denegación de un auto de *certiorari*. Estos son:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

    D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

    E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

    F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

    G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Es decir, estamos obligados a evaluar "tanto la *corrección de la decisión recurrida*[,] *así como la etapa del procedimiento en que es presentada*; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008), que cita a *Negrón v. Srio. de Justicia*, 154 DPR 79, 97 (2001). Asimismo, se ha resuelto que "los tribunales apelativos no debemos intervenir con el ejercicio de la discreción de los foros de instancia, salvo que se demuestre que hubo un craso abuso de discreción, prejuicio, error manifiesto o parcialidad". *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012), que cita a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). Un *certiorari* solo habrá de expedirse si al menos uno de estos criterios aconseja la revisión del dictamen recurrido, por tanto, debemos ejercer nuestra discreción para evaluar si, a la luz de estos criterios, se requiere nuestra intervención. Si no fuera así, procede que nos abstengamos de expedir el auto, de manera que se continúen los procedimientos del caso sin mayor dilación en el foro de primera instancia.

Por *fracaso irremediable de la justicia*, el Tribunal Supremo ha señalado que se trata de las siguientes circunstancias: cuando la decisión interlocutoria afecta perjudicialmente el trámite judicial, lo cual tiene la posibilidad práctica de tornar dicha determinación inapelable; cuando afecte la prerrogativa de alguna parte en seleccionar su abogado de predilección; cuando la determinación interlocutoria de ser errónea

conllevaría la eventual revocación de la determinación de instancia. S. Steidel Figueroa, *Controversias en el ordenamiento procesal civil: A propósito del seminario de procedimiento civil*, 47 Rev. Jur. UIPR 793, 802-03 (2013), que cita a *Job Connection Center Inc. v. Supermercados Econo Inc.*, 185 DPR 585 (2012). "Tal escenario podría configurarse cuando la determinación interlocutoria tiene alguna consecuencia sustancial y directa en la resolución de las controversias de un caso". *Id.* en la pág. 803. El Tribunal Supremo, en *800 Ponce de León Corp. v. American International Insurance Company of Puerto Rico*, 205 DPR 163, 186 (2020), señaló que esta disposición obedece el principio de economía procesal, de manera que no se retrase aún más y de forma innecesaria la adjudicación de las controversias medulares de un caso.

**D**

La Regla 44.1 de las de Procedimiento Civil atiende lo que concierne la imposición de costas, 32 LPRA Ap. V, R. 44.1, y esta específicamente establece lo siguiente:

> Las costas le serán concedidas a la parte a cuyo favor se resuelva el pleito o se dicte sentencia en apelación o revisión, excepto en aquellos casos en que se disponga lo contrario por ley o por estas reglas. Las costas que podrá conceder el tribunal son los gastos incurridos necesariamente en la tramitación de un pleito o procedimiento que la ley ordena o que el tribunal, en su discreción, estima que una parte litigante debe reembolsar a otra.

Nuestro Tribunal Supremo se ha expresado sobre la función reparadora de esta norma de derecho. *Aponte v. Sears Roebuck de P.R.*, 144 DPR 830, 848 (1998). "El propósito es resarcir a la parte victoriosa los gastos necesarios y razonables incurridos durante el litigio". *Id.* Asimismo, "[l]a imposición de costas a la parte vencida es mandatoria". *Id.* Por lo cual, el tribunal sentenciador debe determinar "quién fue el litigante vencedor y cuáles gastos fueron necesarios y razonables". *Id.*

Ahora bien, al finalizar un pleito, puede ocurrir que varias partes resulten victoriosas. *Aponte v. Sears Roebuck de P.R.*, *supra*, pág. 848,

que cita a *J.T.P. Dev. Corp. v. Majestic Realty Corp.*, 130 DPR 456, 461 (1992). De hecho, en este tipo de situaciones, el tribunal puede denegar las costas a ambas partes. *Id.*, que cita a *Allen & O'Hara, Inc. v. Barret Wrecking, Inc.*, 898 F.2d 512 (7th Cir. 1990); Moore's Manual Fed. Practice Procedures, sec. 25.06[2] (Supp.). A su vez, el Tribunal Supremo de Puerto Rico también ha dicho que, si la sentencia no produce una parte victoriosa por completo, el juzgador tiene discreción para denegar la concesión de costas a favor de todas las partes. *J.T.P. Dev. Corp. v. Majestic Realty Corp.*, 130 DPR 456, 463 (1992). Resulta importante mencionar, "que la parte victoriosa es aquella a cuyo favor se resuelve una reclamación independiente, *a los fines de esa reclamación*, aun cuando en el litigio se hayan acumulado otras reclamaciones". *Id.*, en la pág. 465. (Énfasis en el original.)

En cuanto a este asunto es importante subrayar lo determinado en *Garriga Jr. V. Tribunal Superior*, 88 DPR 245, 248 (1963) por nuestro Tribunal Supremo donde expresó que "costas no son todos los gastos que ocasiona la litigación'". Id., pág. 248. Por tal motivo, también ha resuelto que "'[n]o son incluibles como costas los gastos ordinarios de las oficinas de los abogados de los reclamantes tales como **sellos de correo**, materiales de oficina y ... transcripciones de récords de vistas cuando tales transcripciones se solicitan por ser convenientes[,] pero no necesarias para los reclamantes'". *Andino Nieves v. A.A.A.*, 123 DPR 712, 716 (1942) que cita a *Pereira v. I.B.E.C.*, 95 DPR 28, 78 (1967) (Énfasis nuestro.)

Con respecto a los peritos, el Tribunal Supremo ha establecido que el derecho a recobrar los gastos de un perito depende de si se trata de un perito del tribunal o de la parte. Con respecto a este último, la regla general es que son recobrables, a discreción del tribunal, **sólo por vía de excepción, y cuando las expensas que origine el perito estén plenamente justificadas.** *Toppel v. Toppel,* 114 DPR 16, 22 (1983) (Énfasis nuestro.) La compensación de un perito, como costas, no es automática. Por tanto, el tribunal al pasar juicio sobre si procede o no el

pago de dichos honorarios, tendrá que evaluar su naturaleza y utilidad a la luz de los hechos particulares del caso ante su consideración. *Meléndez v. Levitt & Sons of P.R.,* 104 DPR 797, 811 (1976).

### III

Como foro intermedio, al enfrentarnos al mecanismo extraordinario de sentencia sumaria nos corresponde realizar una revisión *de novo* examinando la solicitud, su oposición y la totalidad del expediente. Efectuada la tarea, llegamos a la conclusión de que las determinaciones de hecho realizadas por el foro primario están avaladas por la evidencia que obra en el expediente. Superada esta etapa procedemos a atender el señalamiento de error traído por el Consejo de Titulares en su recurso de apelación. Estos arguyen que el TPI erró al dictar *Sentencia Sumaria Parcial* y no haber impuesto intereses por mora, sino que se limitó a meramente imponer interés legal. Colegimos que el foro primario actuó correctamente.

Tal y como perfilamos anteriormente, el interés legal se distingue de los intereses por mora en cuanto a que el interés legal es compulsorio para la parte perdidosa y se incluye en la sentencia emitida, tal y como sucedió en este caso. No obstante, los intereses por mora ameritan que se cumpla con los siguientes requisitos: (1) se trate de una obligación positiva de dar o hacer; (2) ésta sea líquida, exigible y esté vencida; (3) el deudor retarde, culpablemente, el cumplimiento de su obligación y; (4) el acreedor requiera el pago al deudor, judicial o extrajudicialmente.[22] La deuda líquida y exigible en el caso ante nos, no estuvo vencida hasta tanto el tribunal emitiera sentencia ordenando su pago. Por lo que es contradictorio ordenar el pago de una deuda y conjuntamente imponer intereses por mora sin haber dado la oportunidad al deudor de cumplir con la obligación decretada. Aquellos intereses que son otorgados pre-sentencia y computados a partir

---

[22] J. Castán Tobeñas, *op cit.*, págs. 238-240.

de que surge la causa de acción o la presentación de la demanda dependiendo del caso, son los intereses por temeridad. No obstante, estos no son los que los apelantes solicitan. Al no haber mediado error, perjuicio o parcialidad no vemos motivo para intervenir con la decisión emitida por el foro primario. Por ello, confirmamos.

Ahora bien, el auto de *certiorari* es uno discrecional donde debemos determinar si la controversia planteada ante nuestra consideración es susceptible de revisión judicial a la luz de las disposiciones de la Regla 52.1 de Procedimiento Civil. La determinación recurrida es una resolución interlocutoria, la cual está sujeta a las disposiciones de la Regla 52.1 de Procedimiento Civil, *supra.* El primer examen que debe pasar un recurso de *certiorari* presentado ante el Tribunal de Apelaciones es, si tiene cabida bajo alguno de los incisos de la Regla 52.1 de Procedimiento Civil, *supra.* Esto es, el recurso de *certiorari* debe hacer un señalamiento en torno a remedios provisionales, interdictos, denegatoria de una moción de carácter dispositivo, admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, casos de relaciones de familia, casos que revistan de interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Aducimos que la *Resolución Interlocutoria* recurrida es revisable por tener cabida bajo el supuesto de fracaso irremediable a la justicia. Superado ese primer examen, nos corresponde evaluar si expedimos el recurso en el ejercicio de nuestra discreción bajo lo dispuesto en la Regla 40 del Reglamento del Tribunal de Apelaciones. Expedimos bajo el inciso (A) por motivo de que el remedio y la disposición de la decisión recurrida son contrarios a derecho.

En el recurso ante nos, MAPFRE expone en su señalamiento de error que el TPI erró al conceder mediante su *Resolución Interlocutoria* las costas solicitadas por los apelantes, puesto que la *Sentencia Parcial* dictada no dispone de ninguna de las causas de acción. En cuanto a esto,

no le asiste la razón. La médula de la *Demanda* presentada era cobrar la indemnización de la póliza de seguro emitida por MAPFRE a favor de los apelantes por motivo de los daños sufridos a causa del Huracán María. Luego de un extenso trámite procesal, finalmente el TPI ordenó el pago del ajuste que satisface dicha deuda. Aunque falten controversias por dilucidar no cabe duda de que los apelantes son la parte victoriosa en este asunto particular. Por tal motivo, procede la imposición de costas.[23] Sin embargo, hallamos improcedentes en derecho algunos de los gastos solicitados en el Memorando de Costas presentado por los apelantes. Veamos.

A pesar de la amplia discreción que posee el tribunal de instancia para evaluar la razonabilidad y necesidad de los gastos reclamados por concepto de costas, hay un proceso establecido para ello y hay gastos que nuestro Más Alto Foro ha determinado no son recobrables. Al amparo de la jurisprudencia interpretativa, no son recobrables las partidas solicitadas por los apelantes bajo los renglones de Postage por la cantidad de $21.15, Copying por la cantidad de $23.10 y los peritos utilizados deben ser justificados para que el foro primario pueda otorgar mediante excepción esos gastos como recobrables. Discutido lo anterior, expedimos el auto de *certiorari* y revocamos la *Resolución Interlocutoria* que dio Ha Lugar el Memorando de Costas presentado por los apelantes y eliminamos las partidas mencionadas. Devolvemos el caso para que los apelantes justifiquen la utilización de los peritos desglosados y el tribunal ejerza su discreción.

**IV**

Por los fundamentos anteriormente esbozados, confirmamos la sentencia apelada y expedimos el auto de *certiorari* y revocamos la resolución recurrida. Devolvemos el caso al foro primario para que continúen los procedimientos según lo aquí dispuesto.

---

[23] Véase *J.T.P. Dev. Corp. v. Majestic Realty Corp.*, 130 DPR 456 (1992).

Notifíquese.

Lo acordó el Tribunal y manda la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones